UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X     Docket#
UNITED STATES OF AMERICA,      :     14-cr-00660-DLI-1
                               :
     - versus -                :     U.S. Courthouse
                               :     Brooklyn, New York
EDWIN CORTEZ,                  :
              Defendant        :     December 8, 2014
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR BOND HEARING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government:**      **Loretta E. Lynch, Esq.**
                             United States Attorney

                       BY:   **Jonathan Lax, Esq.**
                             Assistant U.S. Attorney
                             271 Cadman Plaza East
                             Brooklyn, New York  11201


**For the Defendant:**       **Amanda L. David, Esq.**
                             Federal Defenders of NY
                             16 Court Street
                             3rd Floor
                             Brooklyn, NY 11241



**Transcription Service:**   **Transcriptions Plus II, Inc.**
                             740 Sharon Road
                             Copiague, New York 11726
                             rl.transcriptions2@gmail.com




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for Detention

2  Hearing, case number 14-m-1220, United States v. Edwin

3  Cortez.

4          Counsel, your name for the record.

5          MR. LAX:  Jonathan Lax for the government.

6          Good afternoon, your Honor.  Also with me here

7  today is officers from the United States Pretrial

8  Services Department.

9          MS. DAVID:  Good afternoon, your Honor.

10          Amanda David on behalf of Mr. Cortez.

11          THE COURT:  All right.  So it's the

12  government's application to revoke the bond.

13          MR. LAX:  Yes, Judge, in accordance with the

14  filling of the medical professional.

15          THE COURT:  Do you want to say anything else?

16          MR. LAX:  I do not, your Honor.

17          THE COURT:  (Indiscernible).  Okay.  Anything

18  from the agency?  No.  I mean, I read the two

19  submissions, so --

20          PRETRIAL SERVICES OFFICER:  Nothing additional.

21          THE COURT:  All right.  So, Ms. David?

22          MS. DAVID:  Yes, your Honor.  First I want to

23  start off by saying that while obviously this is a huge

24  concern and I understand why the pretrial services

25  brought it to the Court's attention and to counsel's

3

                        Proceedings

1  attention, it is not, I think at all, an appropriate

2  basis for remand that Mr. Cortez is a danger to himself

3  and I think that the case law supports that.

4          The other thing that I want to address is that

5  Mr. Cortez has enormous support in his family, as well as

6  in the fact that he works on a daily basis.  His brother

7  is present in court today.  He's come to all the previous

8  court hearings and part of what happened when Judge Bloom

9  released him on bond was that she saw how immense that

10 support system was.

11         And it is our belief and I think this is

12 completely understandable and makes sense that Mr. Cortez

13 is highly motivated by the fact that he has this strong

14 support system from his family.  Specifically, Mr.

15 Cortez's brother has actually found him an apartment to

16 live in where Mr. Cortez and his brother would stay, not

17 too far from the family's home but a place where

18 essentially when he's on home detention, he'll always be

19 around his family.

20         Mr. Cortez does work five days a week from 9:00

21 to 5:00, which was cleared by pretrial and his concerns

22 about losing his job are completely understandable but

23 again, another motivating factor that has helped Mr.

24 Cortez to really be able to get through and process this

25 case.

4

Proceedings

1          I don't think that it's at all appropriate to
2     remand him to a jail facility or essentially the chances
3     of him harming himself in our opinion increase
4     exponentially based on the fact that it's a high-stress
5     environment. He's never been locked up before.  He'll be
6     apart from his family, away from work and certainly in
7     danger of losing his job.
8               Furthermore, there are alternatives that I
9     think can certainly be put in place that would address
10    these issues and Mr. Cortez is --  we've discussed them
11    with Mr. Cortez and he's completely amenable to them, to
12    include the fact that he would be living with his family,
13    he would also be able to have counseling after work on as
14    much as a daily basis.  If pretrial wants to coordinate
15    with the therapeutic services so that he's required to go
16    to therapy every day, I think that would also address a
17    lot of these issues.
18              We have put in place an intake organization in
19    Queens that Mr. Cortez is scheduled to go to this coming
20    Saturday.  That facility, I know, has an ability to have
21    individuals have counseling services up to three times a
22    week.
23              And in addition to that, again I just want to
24    reiterate the fact that Mr. Cortez himself has expressed
25    the fact that his family and his job are of immense

5

Proceedings

1   importance to him, as well as an incredible motivator to

2   him.  We've discussed the issue which is also in the

3   report about in terms of medication and I don't believe

4   that that's at all an accurate depiction of what Mr.

5   Cortez described and we also discussed with him directly

6   whether or not he would be open to different types of

7   treatment to include that and he has agreed that he would

8   be.

9          THE COURT:  So what would the time-line for

10  that be?

11         MS. DAVID:  I'm sorry, your Honor?

12         THE COURT:  What would the time-line for

13  getting evaluated for that kind of help be?

14         MS. DAVID:  So I've spoke with Ms. Azzarelli,

15  who had to step out but she's a social worker in our

16  office, she expressed to me that she would be able to

17  take him for a full evaluation as early as tonight if the

18  Court would allow him to do that.

19         And I would note, your Honor, that while

20  there's obviously a concern here, the hospital that Mr.

21  Cortez was taken to saw fit to release him and would have

22  done so but for the recommendation that they received

23  from the psychiatrist and they would have done so with

24  the understanding that he was no longer -- they believed

25  that he was no longer a danger to himself at that time.

6

Proceedings

1          Therefore, I think a --

2          THE COURT:  I mean I am not sure I followed

3    that.  Say that again.

4          MS. DAVID:  Sure, your Honor.  So in the

5    description of sort of the course of events that happened

6    over the weekend --

7          THE COURT:  Right.

8          MS. DAVID:  -- there is an acknowledgment that

9    -- or I think in the second paragraph --

10         THE COURT:  Right.

11         MS. DAVID:  -- it says that "While he was

12   hospitalized, they determined that he was fit for release

13   but then there was a recommendation saying that the

14   should be held until this morning."

15         And again, I understand the concerns and

16   obviously counsel shares concerns about Mr. Cortez's

17   safety but I think the fact that a medical professional

18   at a hospital made a determination that he would be fit

19   for release after having seen him overnight for a longer

20   period of time than the intake, I think is relevant.

21         THE COURT:  Maybe I am not following, but he

22   says he had no choice but to -- they had no choice but to

23   release him.

24         MS. DAVID:  Yes, your Honor.  And I think that

25   the reason for -- I mean apart from the phrasing, the

7

Proceedings

1  fact that they were going to release him essentially

2  means that he was no longer -- they determined that he

3  was not a danger to himself or a danger to others.  I

4  don't think that the hospital would choose to release

5  someone into the community after having hospitalized him

6  for that very reason if they hadn't made that

7  determination.

8            THE COURT:  And then what does it mean on the

9  second page of the first letter, what's quoted then,

10  "Professional observation, inpatient care may be

11  appropriate."

12            MS. DAVID:  I believe that's the --

13            THE COURT:  That's from the evaluation.

14            MS. DAVID:  That's from the original intake

15  that was done at first by psychological services.

16            THE COURT:  It says completed on Saturday.

17  Interviewed after he was sent to the hospital.  Do you

18  know what the timing is there?  I just want to know how

19  recent it is that this suggestion that inpatient care and

20  observation might be appropriate?

21            UNIDENTIFIED SPEAKER:  Saturday

22  (indiscernible).

23            THE COURT:  Do you know anything about or any

24  other details then about that middle paragraph, about the

25  medications would be another means of self-harm?

8

Proceedings

1    UNIDENTIFIED SPEAKER:  Well, your Honor, he was

2    asked about medications.  He was actually seen by two

3    different (indiscernible) who were there and he

4    (indiscernible) circumstances was he amenable for any

5    type of medication, psychotropic medications.  And that's

6    why they made the statement that they did.

7    THE COURT:  All right.  So his position

8    different now?

9    MS. DAVID:  And I've spoken with Mr. Cortez and

10   that is not his position.  I am not going to, I guess,

11   discuss further about whether or not he ever gave that

12   position but he certainly is amenable to any type of

13   treatment to include medication if recommended by a

14   doctor and explained to him what the purpose of the

15   medication is for and what the side effects are in a way

16   that would, of course, you know, give him full

17   understanding of what his treatment options are.

18   THE COURT:  All right.  So what's the

19   evaluation that you're proposing here to be taken for

20   tonight?

21   MS. DAVID:  My understanding in talking with

22   Ms. Azzarelli is that there is an intake process at

23   Bellevue Hospital where someone can walk in and be

24   evaluated at length to see whether or not they would be

25   or what services would be best recommended including --

9

Proceedings

1   oh, I am sorry, and I don't want to speak for her because

2   she is present if the Court will allow her to present.

3           THE COURT:  Sure.  If you could provide more

4   information that would be helpful.

5           MS. AZZARELLI:  Sure.  My name is Danielle

6   Azzarelli, A-Z-Z-A-R-E-L-L-I.  I'm a social worker at the

7   Federal Defenders.  Yeah, you know, the Bellevue

8   Psychiatric Center is in Midtown Manhattan.  They offer

9   emergency (indiscernible) services (indiscernible)

10  necessary for overnight care, they will make

11  (indiscernible) for a limited time that they see fit.

12          THE COURT:  All right.  And then would he get a

13  treatment plan out of that or there was a suggestion made

14  that there is a Queens or some place that could do at

15  least three days a week and you're saying you felt that

16  if every day therapy was necessary or recommended, then

17  that would be -- you think that would be available or you

18  would work on making it available or what would it be?

19          MS. DAVID:  So I can allow Ms. Azzarelli to

20  explain whether or not.  There's a treatment plan that

21  comes out of Bellevue but I imagine there would be -- he

22  has an appointment with the facility in Queens on

23  Saturday and they can offer up to three times a week of

24  counseling services and I would suggest also to the Court

25  that if need be, he can go to services every day and

10

Proceedings

1   that's something that Mr. Cortez is amenable to and

2   willing to do and I think that all of those are

3   reasonable alternatives to remanding him to a jail

4   facility.

5            THE COURT:  But do you think if everyday

6   therapy is recommended, that it's available to him?  Do

7   you know that?

8            MS. DAVID:  I'm sorry, your Honor.

9            THE COURT:  Do you think if therapy everyday is

10  recommended, is that available?  Because you've mentioned

11  the Saturday appointment and then there's the three days

12  a week.  Is there an option for which he'll get it every

13  day, if it's what they recommend, either at Bellevue or

14  some other caregiver?

15           MS. DAVID:  Right, I think that the --

16           (Counsel confer)

17           MS. DAVID:  So I think through Queens

18  counseling, it would be only three times a week.  If

19  pretrial would be willing to facilitate a way for Mr.

20  Cortez to do everyday services, then certainly that can

21  be an option.

22           UNIDENTIFIED SPEAKER:  We'd have to see if

23  there is something the treatment provider would

24  recommend.

25           THE COURT:  That's back at First Light or --

Transcriptions Plus II, Inc.

11

                              Proceedings

1            UNIDENTIFIED SPEAKER:  Back at First Light,

2    yes.

3            THE COURT:  And what if the Bellevue evaluation

4    says that that's what recommended?  What happens then?

5            UNIDENTIFIED SPEAKER:  Your Honor, they would

6    have to make a decision, as well because they -- on

7    Saturday, he didn't present this way.

8            THE COURT:  Right.

9            UNIDENTIFIED SPEAKER:  He presented with a plan

10   with intent.  He even said that if the cable cord broke,

11   that he would use a rope to hang himself.  This is the

12   information that we were given.

13           THE COURT:  Right.  All right.

14           For the government?

15           MR. LAX:  Nothing really further, your Honor,

16   other than what's been discussed.  I'm sure frankly that

17   there is some middle ground here, provided of course the

18   defendant doesn't get some assistance and of course, I

19   think the objective here obviously is to ensure his

20   safety and his well-being.

21           THE COURT:  Right.  I mean, okay, it seems to

22   me that there's agreement that that's the priority which

23   is the safest environment for Mr. Cortez and it also

24   seems accurate to me that jail would be a significant

25   stressor.

12

Proceedings

1    That being said, we have the evaluation from
2    First Light which evaluated him but seems like maybe the
3    information that's being given now is a little bit
4    different.  So what I think would be appropriate is to
5    get this Bellevue evaluation, which is obviously a
6    professional environment and follow that course of
7    treatment and go back to First Light if he needs
8    additional assistance.
9        And then let's see where we are after you get
10   this Bellevue evaluation and see if there's a way to have
11   Mr. Cortez live in what appears to be a supportive
12   environment with his family and the support of his
13   brother and the job which sounds like it has real
14   stability, and probably more stability than introducing
15   Mr. Cortez to a new -- and I would suspect, more highly
16   stressing environment of going into a detention facility.
17       So procedurally, what's the best way to do
18   this?   He's out on bond.  Do you have the bond?
19           THE CLERK:  I don't have the bond.
20           THE COURT:  You don't have it.  Do you have it?
21   We're going to amend the bond.  We're going to get the
22   psychiatric -- you're going to do this Bellevue process
23   today.  So it will be to get the protective evaluation,
24   follow the course of treatment that's recommended by
25   whoever the Bellevue professionals are.  Go back to First

13

Proceedings

1  Light and continue whatever the course of treatment he

2  was -- and evaluation that he's getting there and see

3  where we are.

4           All right.  So do you know what would the

5  turnaround time -- you think Bellevue, it will be tonight

6  and you'll know more?

7           UNIDENTIFIED SPEAKER:  The (indiscernible) the

8  process.

9           THE COURT:  Does anyone have --

10          UNIDENTIFIED SPEAKER:  (Indiscernible).

11          THE COURT:  Okay.  All right.  So basically the

12  request to remand is denied.  If it seems as if you can't

13  get the appropriate treatment or support outside of this

14  non-custodial or non-incarceration therapeutic

15  environment, then come back.  Let me know what the story

16  is.  I'm here all week.  All right.

17          So this, I'm just going to write this on the

18  bond and amend the bond.  There's Edgar Cortez and Mr.

19  Castellan (sic) were the sureties.  Are they -- is one of

20  the one who is here?

21          MS. DAVID:  Edgar Cortez is present and his

22  sister, Romey Castella was the other suretor.

23          THE COURT:  Oh, was it Romey, is that who it

24  is.  Okay.  I would like to tell him that this is what

25  the change is and will you let Ms. Castella know as well?

14

Proceedings

1          MR. EDGAR CORTEZ:  Sure.

2          THE COURT:  And if she does want to be on as

3  the surety, then she can let us know.  All right.  So you

4  were in the courtroom, did you hear what I was saying?

5          MR. EDGAR CORTEZ:  Yes.

6          THE COURT:  All right.

7          MR. EDGAR CORTEZ:  Yes, your Honor.

8          THE COURT:  I guess, Felix, do you want to get

9  his information for the record, even though you got it

10  the last time, just get his name.

11  (SURETOR SWORN)

12          THE CLERK:  State your name for the record.

13          MR. EDGAR CORTEZ:  Edgar Cortez.

14          THE CLERK:  Thank you.

15          THE COURT:  All right.  So Mr. Cortez, you were

16  in the courtroom when I was talking about what the next

17  steps are going to be with regard to the requests that

18  your brother be remanded to custody.  We're not going to

19  do that.  We're going to have him proceed with the

20  assistance of social workers here to Bellevue to get the

21  psychiatric evaluation.  See what course of treatment,

22  which may be inpatient -- I don't know.  I have no idea

23  what they'll recommend and he'll have to follow that

24  course of treatment.

25          Do you understand that?

Proceedings

1          MR. EDGAR CORTEZ:  Yes.

2          THE COURT:  All right.  So that's going to be

3  in addition to everything that was gone over the other

4  day with you about the conditions of this bond.

5          Do you want to stay on this bond as a surety,

6  even with these additional conditions?

7          MR. EDGAR CORTEZ:  Yes.

8          THE COURT:  Okay.

9          MS. DAVID:  Your Honor, and just to be clear --

10          THE COURT:  Yes.

11          MS. DAVID:  Ms. Azzarelli, of course, is

12  agreeing to escort -- accompany Mr. Cortez to the

13  hospital.  I just want to make sure that she's not

14  expected to stay through the entire process because I am

15  sure there are parts of it where she's not going to be

16  able to be present.

17          THE COURT:  What I would like, if this works

18  with your office, is you make sure that Mr. Cortez starts

19  down this process.  Mr. Cortez, you're directed to finish

20  this process, whatever it is that Bellevue does because

21  as the professional staff of the psychiatric hospital.

22  If they think you should be inpatient, then you need to

23  follow their directions.  If they direct you to come back

24  eery day for treatment, do that.

25          The medications is a little more difficult.

16

Proceedings

1   You think about what it is you're going to do.  Speak

2   with your attorney.  If the recommended course of

3   treatment is you take medications and you don't want to

4   take the medications, then you're going to have to come

5   back here and we're going to have to talk about what the

6   right way to handle that is.

7                Do you understand?

8                THE DEFENDANT:  Yes.

9                THE COURT:  All right.  And are you in

10  agreement with that?

11               THE DEFENDANT:  Yes.

12               THE COURT:  You understand this is all --

13  everyone here, the government, your attorneys, we're all

14  concerned with your safety.  We want you to be the safest

15  environment possible.

16               Do you understand that?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Okay.  And then what's the process

19  for coming back around to First Light?  Do you have a

20  standing appointment with them yet or  --

21               UNIDENTIFIED SPEAKER:  Nothing yet.

22               THE COURT:  Nothing yet.  That was the plan --

23  okay.  So you should confer with pretrial and see what

24  the best way to coordinate with the First Light Services

25  is.  It might be as an adjunct to what you're recommended

17

Proceedings

1    by Bellevue.  It might be what they agree with.  We still

2    need more information to figure this out, right?

3              Anything else we should cover as part of this?

4              MR. LAX:  Nothing from the government.

5              THE COURT:  No.  Ms. David?

6              MS. DAVID:  No, your Honor.

7              THE COURT:  All right. Mr. Cortez --

8              MR. LAX:  Thank you, your Honor.

9                   (Matter concluded)

10                       -o0o-

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

18

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **12th** day of **February**, 2015.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.