**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

July 19, 2016

The Honorable Chief Judge Dora Irizarry
United States District Chief Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    United States v. Edwin Cortez
                Criminal Docket No. 14CR660

Dear Chief Judge Irizarry:

      Edwin Cortez comes before this Court encumbered with fear, sincere remorse, and shame. Often he becomes speechless when asked to verbally articulate his reflections on the behavior that led to his arrest but never is the import of his choice to observe, distribute and advertise illegal pornography something he tries to forget or minimize. By the time that Mr. Cortez is before this Court for sentencing he will be 47 years old yet he still bears the scars of his pre-adolescence. Unable to heal from the ongoing abuse that he experienced as a child, Mr. Cortez functioned as an adult hiding that terrible secret, engaging in behavior that hurt many children the same age he was when he suffered these traumas and unsuccessfully battling an obsession that stems from a deeper mental affliction undoubtedly tied to his childhood experiences.

      But Edwin Cortez continued to function as a loving son, brother and friend and a loyal and hardworking employee. His immediate community experienced him as a supportive, kind and gentle man who worked hard to help his family, his friends and even strangers. They do not experience him to be a predator or a danger and even in learning of his crime many of them stand by him knowing his potential to be successfully treated. Since his arrest in November 2014 Mr. Cortez has demonstrated that this faith in his potential is not misplaced. He has not reoffended, taken his treatment very seriously and proven for over 1.5 years that he takes full responsibility for his offenses and that engaging in treatment to address the reasons why he committed them has been effective.

      There is no argument that Mr. Cortez's behavior was reprehensible and had a devastating impact on the lives of vulnerable members of the population. For that Mr. Cortez will never forgive himself. And indeed the law contemplates a harsh and severe punishment for individuals

1

who are guilty of this behavior. Mr. Cortez does not come before the Court asking to diminish the importance of addressing his actions with serious punishment but is asking that the Court see those actions in the context of all of his experiences. Furthermore, he requests that the Court consider not just his crime but his potential for rehabilitation and the impact of the sentence ordered not just on himself but on his loved ones. Mr. Cortez requests that the Court find the mandatory minimum sentence of 15 years for this offense unconstitutional and disproportional to the nature of the offense and requests that the Court sentence him to a period of incarceration below the statutory minimum. Absent such a finding, Mr. Cortez requests that the Court sentence him to the minimum, a lengthy period of incarceration that is certainly more than sufficient to comply with the factors to be considered under 18 U.S.C. Section 3553(a).

## Applicable Sentencing Guidelines

As an initial matter we do not object to the guideline range outlined in the pre-sentence report. Probation calculates Mr. Cortez's total offense level to be 37. This is based on a base offense level of 22, with additions for specific offense conduct and reductions for Mr. Cortez's early acceptance of responsibility. With a total offense level of 37 and a criminal history category of I, the guideline imprisonment range is 210-262.

## Mr. Cortez's Childhood and Adolescence

Mr. Cortez was born in Bolivia on July 20, 1969. He and his four siblings share the same parents, Pacifico Cortez and Maria Cortez. The Cortez family is a tight knit unit which functions by being incredibly supportive to each other. Prior to Mr. Cortez's arrest he lived at his family's home where both his parents and three of his four siblings resided with their own families. Prior to arriving in the United States Mr. Cortez lived with his mother and siblings in Bolivia with his father traveling back and forth from the United States in an effort to secure employment and pave a pathway for the family to live in America permanently. Mr. Cortez recalls always admiring his father's incredible sacrifice and unfailing work ethic – even as a child he wished to emulate these qualities despite missing his father's consistent presence in his life.

At first blush much of Mr. Cortez's upbringing seems unremarkable – the family struggled somewhat financially, relying on Mr. Pacifico Cortez to send money to them from his employment as a chef in the United States while his mother maintained the home and cared for Mr. Cortez and his siblings. They were fortunate to have had additional assistance from Mr. Cortez's maternal aunt in Mr. Pacifico Cortez's absence. The second to youngest of the five children, Mr. Cortez was small in stature as a child which contributed to him being reserved and somewhat shy. Unfortunately it also contributed to him being the victim of bullying at school and social isolation from his peers.

That isolation and the desire to fit in with both his peers and within his family unit made the prospect of reporting the sexual abuse that began after he turned 9 years old daunting and seemingly implausible. Because the community in which they lived was also close knit it was not unusual for the neighbors to spend time at Mr. Cortez's home and vice versa. Mr. Cortez's neighbor, an 18 year old teen at the time, would come over to the Cortez's home to spend time with the Cortez children. Mr. Cortez, shy and having few friends, enjoyed the attention from the

2

older boy but that attention quickly turned into inappropriate games, then touching, and progressed to oral sex. When Mr. Cortez turned 11 the abuse turned into anal penetration and it continued until Mr. Cortez was 14 years old and the family moved out of the community. With the abuse came shame and fear. As a child Mr. Cortez vacillated between wanting to feel special to his abuser and intense confusion and self-loathing. Too young to be able to understand why he felt both, Mr. Cortez blamed himself for the abuse well in to his adult years and believed that disclosing it would lead to his family's disappointment and disgust. So severely impacted by this web of emotions, Mr. Cortez at 12 years old attempted to strangle himself and commit suicide. Through the years, well into his adulthood, his depression and self-hatred would manifest in thoughts to end his life.

While Mr. Cortez became good at hiding his fears and this trauma from his loved ones it continued to cloud his self-perception and his perceptions of healthy relationships into his late adolescence. As the abuse continued his grades deteriorated. While his peers were spending time with friends chatting and planning social outings, Mr. Cortez further isolated himself and became disengaged from the academic environment. As a teenager, Mr. Cortez's uncertainty about his sexuality and about what constituted appropriate sexual behavior intensified. He found himself perpetuating the behavior he had experienced at the hands of his abuser and admittedly had sexual contact with a much younger cousin around his eighteenth birthday. His feelings and actions terrified him and ultimately the fear of how he would be viewed outweighed the burdening shame. Mr. Cortez continued to keep quiet about his abuse and keep quiet about acting on his inappropriate emotions. Coming to the United States at age 18 seemed to Mr. Cortez as a chance to start over and escape the lingering questions and overwhelming darkness of his past.

## Mr. Cortez's Immigration to the United States

Upon arriving to the United States Mr. Cortez and his family faced the emblematic issues of assimilation into a new culture. While Mr. Cortez had technically graduated from high school in Bolivia, his education there did not meet the standards of high school equivalency in the United States. He quickly enrolled in a GED program and received his diploma. The family remained close and relied upon one another for support both emotionally and financially. Mr. Cortez, inspired by his father's courage and hard work ethic, immediately threw himself into the workforce, hoping to be a contributing member of his household. At age 19 he began full time employment as a shipping clerk at a paint brush factory where he worked until leaving to attend school. Mr. Cortez, however, continued to struggle in school again finding the social environment daunting. He preferred to be in a work environment where he could work independently and he quietly quit his education to return to the workforce full time.

Mr. Cortez has been steadily employed throughout his adult life. He cites his ability to maintain employment as the most positive aspect of his life outside of his family. Until he began working at Fedcap (formerly FEGS) Mr. Cortez's chosen employment had been devoid of social interaction. He describes his current job as the first time that he felt comfortable really socializing with others outside of family. As a mailroom supervisor Mr. Cortez works with and manages disabled individuals who are also employees in the mailroom. The work has been

3

meaningful to him because it makes him feel both useful and that he is helping others. It also has allowed him to support his parents as they have aged out of the workforce and has given him the flexibility to be a reliable member of his family – present to help run errands and assist with chores. The combination of working and being an active member of his family unit has made Mr. Cortez invaluable to his loved ones as expressed in the outpour of gratitude and sincere love and appreciation written in the attached letters. *See Attachment A*. His loved ones experience him as a compassionate, kind and generous man who does not worry about material things, someone who they rely on for solace, support and advice.

But of course Mr. Cortez, while trying to be a pillar of strength for his family, was struggling desperately. Unable to escape the impact of his childhood trauma, he developed another dark secret, viewing pornography. Starting off as occasional curiosity, the frequency with which he viewed these images increased over time.

### The Instant Offense

As Mr. Cortez aged into adulthood he began viewing more illegal images and started to seek out images to view. He hid this behavior from his family for the same reasons he hid his abuse, out of shame and self-loathing. By the time of his arrest, he admitted to law enforcement that he had entirely lost control. So connected in his mind was the abuse and his criminal activity that he notably admitted to agents that his primary interests in child pornography were young boys ages nine to fifteen, the same age range that he was when he was sexually abused. To be clear, at no point, either before or during his treatment has Mr. Cortez seen his own trauma as an excuse for his behavior. While therapy has helped him better understand their connection, Mr. Cortez in no way believes that he is justified in his behavior for any reason, regardless of what it stems from.

As an adult Mr. Cortez has never touched or had any sexual contact with a child.[1] Of obvious concern to the Court is what danger Mr. Cortez presents to the community and the young people in his immediate family. Mr. Cortez has two nephews and a niece who he formerly resided with prior to his arrest for this offense. Since his arrest he no longer lives in the home and is only, pursuant to the provisions of his bond and pretrial supervision, permitted to see his nephews and niece under the careful supervision of their parents, his older brother and sister. Mr. Cortez has been completely compliant with these conditions. Prior to his arrest Mr. Cortez had struggled with the hypocrisy of wanting the children in his family to be safe and cared for and being a source of security and dependability in their lives while simultaneously engaging in behavior that risks the safety of other children. He is absolutely adamant that he has never and would never engage in sexual conduct with his nephews or his niece or any other child. Mr. Cortez's behavior was a horribly misguided attempt to manage desires that he knows are

---

[1] The pre-sentence report makes reference to Mr. Cortez taking a polygraph exam and agents finding the exam showed a strong deceptive reaction when Mr. Cortez was specifically asked about sexual contact with minors. Subsequent to the polygraph, Mr. Cortez honestly admitted to the sexual contact he had with a much younger relative when he was 18 years old. However, there is no indication that he has ever engaged in any sexual contact with children after his teenage years. Given Mr. Cortez's ongoing candor with his therapists both at First Light and Queens Counseling for Change, there is no reason to believe that he would not continue to be forthcoming about his behavior as part of his ongoing treatment.

4

abhorrent and wrongful. He admits that he believed by viewing child pornography he was addressing his inappropriate feelings without acting on them. Therapy has forced Mr. Cortez to realize that this simply is not true. It has made him realize that he played a significant part of the pattern of abuse that he finds unacceptable and that he himself would never perpetuate as an adult.

### The Organization of the Material Does Not Show Sophistication

Downloading images in bulk because of the nature of the peer to peer file sharing that Mr. Cortez was using, often led to him downloading large amount of images and videos at once, without discrimination about the nature of all the videos received. At times he would download entire image libraries rather than choose individual files. Further, the files found on his computer mostly retained the original file names under which they were downloaded and were not organized into a sophisticated system of folder or subfolders. Such an organizational scheme would be reflective of the downloader having seen all of the files obtained as opposed to downloading them in mass and viewing a portion.

### Mr. Cortez's Behavior Post Arrest and Engagement in Treatment

Mr. Cortez has been consistently attending treatment services as required by the Court at First Light Psychological Services and, using his insurance, been attending additional group therapy sessions at Queens Counseling for Change. The group therapy program he attends at Queens Counseling is targeted towards individuals who have pled guilty to sex related criminal activity. At First Light Mr. Cortez attends individualized therapy for one hour once a week. His reports indicate that he is both entirely compliant and engaged in therapy and making progress on the goals outlined by his treatment professionals, including accepting responsibility for and expressing regret for his actions. Mr. Cortez has also been compliant with the recommended medication regimen, taking his prescribed medication regularly and attending sessions monthly with a psychiatrist to assess his medication compliance and intake.

At his initial evaluation with First Light and entirely consistent with his background, Mr. Cortez was diagnosed with suffering from major depressive episode (severe, without psychotic features), posttraumatic stress disorder and generalized anxiety disorder. These diagnoses demonstrate that Mr. Cortez's engagement in the instant offense stems from significant mental illness that requires extensive treatment. Thus far the treatment that Mr. Cortez receives has been effective. He has not viewed, distributed or requested/placed an advertisement for child pornography since the time of his arrest. Mr. Cortez has been able to reflect upon his behavior and his inappropriate perceptions, as well as develop useful and effective coping mechanisms. Treatment has helped him begin the long road to rehabilitation.

Steadily encouraging his productive engagement in treatment has been his ability to continue to have close and now more open interactions with his adult family members. Mr. Cortez's siblings have attended many of his court hearings. While this ordeal has rocked and deeply hurt his family it has also strengthened their bond and brought them even closer together. Mr. Cortez's eyes well up with tears when he speaks about his loved ones. He is both deeply ashamed for the pain that he has put them through and overwhelmed by their consistent love and

support. It is an understatement to say that the impending separation from them and quite candidly the possibility of his parents passing away before he is released, has been devastating for Mr. Cortez to process.

## Reasonable Sentence Under 18 U.S.C. Section 3553(a)

Mr. Cortez faces a mandatory minimum of 15 years under the statute that proscribes his conduct in this case. Fully aware of the severe consequences Mr. Cortez elected to plead guilty rather than going to trial, largely out of a desire to limit the public devastation his actions have caused the victims and his family.

Setting aside for the moment the mandatory minimum associated with the offense and focusing on factors used to assess and predict future recidivism, these factors all support the argument that Mr. Cortez is highly unlikely to reoffend. The factors of prior criminal history, education, employment, alcohol and substance abuse, anti-social behavior and ties to the community, when applied to Mr. Cortez all support this proposition. Mr. Cortez has no prior criminal history, has his high school diploma with a demonstrated attempt at furthering his education, has long history of employment, no history of alcohol or substance abuse and very strong ties to the community in the form of his family and loved ones. These individuals are aware of his conviction and remain supportive of Mr. Cortez because they believe that he is not a danger to their families and their community.

Mandatory minimums of a similar magnitude outlined by the statutes governing related sex offenses are meant to address recidivist behavior, and offenses that involve the production of illegal material.[2] In Mr. Cortez's case the government chose to supersede the indictment lodged against Mr. Cortez to include not just the original counts reflecting distribution and possession based on his file sharing but advertisement based on requests he posted in an online chat forum. Mr. Cortez is not a recidivist or a producer. As aforementioned, in fact the factors used to predict future recidivism support the argument that he is highly likely to reoffend.

A 15 year sentence would be cruel and unusual punishment as applied to Mr. Cortez's case. The Supreme Court has determined that a punishment will be deemed "cruel and unusual" when it is deemed either "inherently barbaric," or "disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 59 (2010). There is no question that the crime here is serious in nature, however the minimum required sentence is simply not proportionate with Mr. Cortez's behavior. Mr. Cortez is subject to a lengthy period of incarceration despite not having prior convictions for sexual offenses indicating that he is a predator or being an individual who produces material, a crime also indicating predatory behavior.

---

[2] *See* 18 U.S.C. Section 2251 subsections, (a), (b) and (c) all requiring a mandatory minimum of 15 years. 18 U.S.C. Section 2251 (a) (prohibits a person from enticing or transporting a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct); 18 U.S.C. 2251(b) (prohibits a parent or legal guardian from knowingly permitting a minor to engage in such conduct); 18 U.S.C. 2251(c) (prohibits a person from enticing or using a minor to engage in such conduct outside of the United States). *See also* 18 U.S.C. Section 2252A (requiring a 10 year mandatory minimum for a person with a prior sex offense conviction who possesses child pornography, 15 year mandatory minimum for a person with a prior sex offense conviction for receipt and trafficking offenses).

6

      If the Court does not determine that Mr. Cortez's mandatory minimum sentence of 15 years is a violation of the Eighth Amendment, the defense requests that the Court sentence Mr. Cortez below his guideline range to the mandatory minimum. As noted in the presentence report, guideline Section 2G2.2 can lead to a sentence that is inconsistent with the mandates of 18 U.S.C. Section 3553(a). In *United States v. Dorvee*, 616 F.3d 174, 188 (2nd Cir. 2010), the Second Circuit found that Section 2G2.2 is "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." The Court noted that Section 2G2.2 was not created using an empirical approach based on past sentencing data. In *Dorvee*, the Court found the guideline to be based on mandates from Congress that required harsher and harsher penalties. *Id.* At 184-186. The Court also noted that the will "apply particular scrutiny to sentences based on Guidelines Section 2G2.2." *United States v. Bourque*, 520 Fed.Appx. 23, 25 (2nd Cir. 2013). Here the defense respectfully requests that the Court depart from the guidelines and sentence Mr. Cortez to the already substantial period of incarceration mandated by the statute. Upon his release Mr. Cortez will be approximately 62 years old and be required to register as a sex offender in addition to being required to comply with the very stringent Adam Walsh conditions associated with this offense. A 15 year sentence of incarceration is more than sufficient to address the factors contemplated under 18 U.S.C. 3553(a).

## Conclusion

      Mr. Cortez comes before the Court a man both deeply remorseful for his actions in contributing to the pain of the victims portrayed in the videos that he possessed but also damaged by his own traumatic experiences as a victim during his childhood. For the past year and a half he has been in compliance with his treatment and demonstrated that he is committed to that treatment. For these reasons we request that the Court fashion a sentence that contemplates Mr. Cortez's history and his great potential to be rehabilitated.

      Sincerely,

      /s/ Amanda David

      Counsel for Edwin Cortez

cc: AUSA Keith Edelman, Senior Probation Officer Patricia Sullivan (via email)