

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:KDE
F.#2014R01930

*271 Cadman Plaza East, 4th Floor*
*Brooklyn, New York  11201*

July 26, 2016

By Hand and ECF

The Honorable Dora L. Irizarry
Chief United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Edwin Cortez
      Criminal Docket No. 14-00660 (DLI)

Dear Chief Judge Irizarry:

  The government respectfully submits this letter in advance of sentencing in the above-referenced case, which is currently scheduled for August 2, 2016 at 2:15 p.m.  For the reasons stated below, the government respectfully requests that the Court impose a sentence within the United States Sentencing Guidelines ("Guidelines") range of 210 to 262 months' imprisonment.  In addition, the government respectfully submits that the Court should impose a restitution order in the amount of $183,415 for the six victims of the defendant's offense.

I. Background

  As set forth in the Presentence Investigation Report, as amended ("PSR"), on October 25, 2014, an undercover agent with the Federal Bureau of Investigation ("FBI") signed into a peer to peer file sharing ("P2P") network and observed that the defendant was online.  (See PSR ¶¶ 9, 10.)  In a private message, the defendant communicated to the undercover agent: "I like boys 8 to 13" and requested "videos and if they are latino boys mucvh (sic) better."  (See id. ¶ 10.)  The defendant proceeded to provide the undercover agent with access to his protected folders, which the undercover agent observed had several files and filenames indicative of child pornography.  (See id.)  Using the P2P network, the

undercover agent downloaded six video files depicting child pornography from the defendant. (See id. ¶ 11.)

On November 25, 2014, FBI agents executed a search warrant of the defendant's residence in Queens. (See id. ¶ 12.) The defendant was present at his residence at the time of the search, waived his Miranda rights and agreed to speak to agents. (See id. ¶ 13.) In his statement, the defendant admitted that he was the user of the P2P file sharing program and had traded child pornography with this account, as well as on Skype and Hotmail. (See id.) The defendant stated that he had traded child pornography for over ten years. (See id.) The defendant indicated a preference for boys aged nine to fifteen years old, and stated that he is not sexually attracted to adults, only to boys. (See id.) The defendant reported that he was sexually abused by a family member in Bolivia from approximately age 8 to age 14, but stated that he had never had inappropriate contact with a minor. (See id. ¶ 14.) After the defendant failed a polygraph test, however, he ultimately admitted that when he was eighteen years old and living in Bolivia he had sexual contact with a ten-year-old male cousin, who is now an adult. (See id. ¶¶ 14-18.) Forensic analysis of the electronic devices seized from the defendant revealed approximately 455 images of child pornography and 1,965 video files containing child pornography. (See id. ¶ 20.)

On December 22, 2014, the defendant was charged in an indictment with four counts of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2). On October 28, 2015, the defendant pled guilty before Your Honor to Count One of a Superseding Indictment, which charged him with advertising child pornography, in violation of 18 U.S.C. §§ 2251(d)(1)(A) and 2251(e). This offense carries a mandatory minimum sentence of 15 years' imprisonment.

II.  Guidelines Calculation

The Guidelines Calculation set forth in the PSR, as amended[1], is as follows:

| | |
|---|---|
| Base Offense Level (§ 2G2.2(a)(2)) | 22 |
| Plus: Material Involving a Prepubescent Minor (§ 2G2.2(b)(2)) | +2 |
| Plus: Distribution for a Thing of Value (§ 2G2.2(b)(3)(B)) | +5 |
| Plus: Material Portrays Sadistic and/or Masochistic Conduct or Other Depictions of Violence (§ 2G2.2(b)(4)) | +4 |

---

[1] The original PSR included a 2-point enhancement for distribution under U.S.S.G. § 2G2.2(b)(3)(F). After the government objected, the Probation Department issued its first addendum and modified the PSR to instead include a 5-point enhancement because the instant offense involved distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain pursuant to U.S.S.G. § 2G2.2(b)(3)(B).

|  |  |
|---|---|
| Plus: Offense Involved Use of Computer for Distribution (§ 2G2.2(b)(6)) | +2 |
| Plus: Offense Involved 600 or more images (§ 2G2.2(b)(7)(D)) | +5 |
| Minus: Timely Acceptance of Responsibility (§§ 3E1.1(a) and (b)) | -3 |
| Total: | <u>37</u> |

Because the defendant is in Criminal History Category I, the applicable range of imprisonment in the PSR is 210 to 262 months.

III.    A Guidelines Sentence is Appropriate

Congress has long recognized that the sentences and sentencing ranges for offenses involving the exploitation of children should be severe. Child pornography is one of the most insidious traps confronting children in this country. Both Congress and the Supreme Court have identified the prevention of the sexual exploitation and abuse of children as a government objective of incredible importance due to the psychological and physical effects that abuse has on children and their families.

In a child pornography case such as this one, the primary victims are the children depicted in the defendant's child pornography. United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001); United States v. Sherman, 268 F.3d 539, 547-48 (7th Cir. 2001). As the Sherman Court noted, "child pornography directly victimizes the children portrayed by violating their right to privacy[.]" 268 F.3d at 547. As the Seventh Circuit noted in Shutic, "children . . . suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret . . . concern for the welfare of the children who are used to create pornography is part of the public concern over child pornography[.]" 274 F.3d at 1126 (citations and quotations omitted). Moreover, the possession of images of child sexual victimization is not a victimless crime. Courts have routinely recognized that even a "'passive' consumer who merely receives or possesses the images directly contributes to this continuing victimization." Sherman, 268 F.2d at 545 (citations omitted). "Indeed, one of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted." Id. at 547.

Here, a significant custodial term of imprisonment is appropriate. The defendant possessed a large number of highly disturbing images and videos, including children as young as four years old being raped. The defendant admitted to viewing such material daily and to trading child pornography for 10 years. (See PSR ¶ 13.) Such extreme circumstances of the instant offense counsel in favor of a substantial sentence. See 18 U.S.C.

§ 3553(a)(1), (2).

More troubling, however, is that the defendant's misconduct was not limited to trafficking in illicit material. Rather, by his own admission, he has an uncontrollable sexual attraction to young boys, which he acted upon at least once. The defendant admitted that when he was 18 years old in Bolivia, he sexually molested his 10-year old male cousin. (See id. ¶ 18.) Subsequent to this, the defendant has traveled back to Bolivia and spent time with two minor nephews. In addition, Skype chats underlying the advertising charge reveal that the defendant communicated with a co-conspirator and offered to send a live videocamera feed of a young boy. The defendant also sent to this co-conspirator pictures of a young boy that the defendant "used to see." Given that the defendant used to live with nephews, the danger for further molestation is extremely high.

Whether or not the defendant only once molested a minor child, the fact remains that the defendant is an extreme danger to members of his own family as well as the community more broadly. By his own admission, the defendant cannot control his sexual desire for young boys. The need to incapacitate him to prevent any further physical assaults is severe. This too weighs in favor of a Guidelines sentence.

In sum, adequate punishment, respect for the law and just punishment all call for a sentence within the Guidelines. See 18 U.S.C. § 3553(a)(2). Such a sentence sends the message that consumers and distributors of extreme child pornography can expect serious punishment for their crimes. Moreover, a Guidelines sentence sends a message to the defendant and, just as importantly, to other offenders that such behavior will not be tolerated and that child exploitation crimes have serious consequences.

IV. Restitution

The government has received (and forwarded to the Probation Department) restitution claims from victims of certain "series" of child pornography that were found on the defendant's electronic devices: (1) five victims in the "8 kids" series; and (2) "Andy," a victim from the "spongB" series. Specifically, the "8 kids" victims request $25,000 each, for a total of $125,000. "Andy" requests $25,000 in restitution, plus the costs of submitting his request, for a total of $58,415. For the reasons set forth below, the government respectfully submits that these requests should be granted.

A. Legal Standard

Under 18 U.S.C. § 2259(a), restitution to child pornography victims is mandatory. A defendant must be ordered to pay "the full amount of the victim's losses," which may include "any costs incurred by the victim" for:

(A) medical services relating to physical, psychiatric, or psychological care;

4

>(B) physical and occupational therapy or rehabilitation;
>(C) necessary transportation, temporary housing, and child care expenses;
>(D) lost income;
>(E) attorneys' fees, as well as other costs incurred; and
>(F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1), (3). A court may not decline to issue a restitution order because of "the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4).

In Paroline v. United States, 134 S. Ct. 1710 (2014), the Supreme Court held that "[r]estitution is . . . proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." 134 S. Ct. at 1722. In Paroline, the petitioner pleaded guilty to possessing child pornography, including images of victim "Amy," who was sexually abused as a child and learned about the trafficking of photographs of her abuse at the age of 17. Id. at 1717. As the Supreme Court recognized, "[t]he knowledge that her images were circulated far and wide renewed the victim's trauma and made it difficult for her to recover from her abuse." Id. Akin to the suffering of many child victims, the crimes of Amy's abuser "were compounded by the distribution of images of her abuser's horrific acts, which meant the wrongs inflicted upon her were in effect repeated; for she knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her." Id. Amy sought restitution from defendant Paroline for lost income, future treatment, and attorney's fees and costs, and conceded that her losses did not flow from specific knowledge of defendant Paroline's identity or specific conduct. Id. at 1718.

All members of the Paroline Court agreed that 18 U.S.C. § 2259 requires proximate cause for all of the statute's loss categories. Id. at 1722, 1730-31, 1735-36. They also unanimously agreed that proximate causation was not at issue on the facts of the case. Id. The majority opinion further recognized the pervasive problems caused by the trafficking of child pornography:

>The demand for child pornography harms children in part because it drives production, which involves child abuse. The harms caused by child pornography, however, are still more extensive because child pornography is "a permanent record" of the depicted child's abuse, and "the harm to the child is exacerbated by [its] circulation."

Id. at 1716-17 (quoting New York v. Ferber, 458 U.S. 747, 759 (1982)).

Under <u>Paroline</u>, proximate causation requires two things: first, that "the former event caused the latter" – or actual cause or cause in fact, and second, that the first event has a "sufficient connection to the result." <u>Id.</u> at 1719. As to the question of cause-in-fact, the majority opinion rejected the traditional but-for causation standard advocated by defendant Paroline, as "it would undermine the remedial and penological purposes of § 2259 to turn away victims in cases like this." <u>Id.</u> at 1726.

Instead, the Supreme Court adopted the government's aggregate-causation theory, based on tort law, that when multiple causes combine to produce an event and no cause is necessary or sufficient, each cause can be said to be one cause-in-fact of the event. <u>Id.</u> at 1725-27. In other words, Paroline's criminal conduct contributed to the continuing harm suffered by the victim, and although "it is not possible to identify a discrete, readily definable incremental loss he caused, it is undisputable that he was part of the overall phenomenon that caused her general losses." <u>Id.</u> at 1726.

The Supreme Court then addressed how to calculate restitution in cases where "a defendant possessed a victim's images and that . . . victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant." <u>Id.</u> at 1727. The Court concluded that defendants like Paroline should be required to pay "restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses," and that the amount should be determined by the district court, in the exercise of its discretion. <u>Id.</u> at 1727-28. Under such a framework, restitution orders in similar cases would "serve the twin goals of helping the victim achieve eventual restitution . . . and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." <u>Id.</u> at 1727.

The <u>Paroline</u> Court emphasized that there is no "precise mathematical inquiry" governing this determination, and that district courts must exercise "discretion and sound judgment" in fashioning awards. <u>Id.</u> at 1727-28. To that end, courts should consider a variety of factors, including the number of defendants caught, likely to be caught, and existing in the world; whether the defendant produced or distributed the images; how many images he possessed; and "other facts relevant to the defendant's relative causal role." <u>Id.</u> at 1728. Using these "rough guideposts," courts should determine restitution orders that are neither "severe" nor "trivial." <u>Id.</u>

B.  <u>Defendant's Restitution Obligations</u>

Here, the defendant pleaded guilty to advertising child pornography on or about June 1, 2014. Specifically, Skype chat conversations revealed that beginning on that date, the defendant communicated with another individual, requesting that he sell the defendant 10 videos of child pornography, including homemade videos, in exchange for $100. As part of the negotiations, however, the defendant offered to send his co-conspirator

6

videos as well. Records obtained from Western Union confirm that $100 was wired from the defendant in New York to his co-conspirator in Mexico on June 7, 2016. The co-conspirator proceeded to send a number of videos to the defendant in the coming days as agreed upon.

The defendant should be ordered to pay the amount requested by the victims in the "8 kids" and "spongB" series, which he possessed. Although the defendant did not specifically advertise or purchase these videos, as part of the negotiations, the defendant offered to send his co-conspirator child pornography, and he in fact possessed these two series. As such, the defendant was a "proximate cause" of these victims' losses. See United States v. Chow, 760 F. Supp. 2d 335, 338 (S.D.N.Y. 2010) ("[A]s the mere existence of the child pornography invades the privacy of the child depicted, the recipient or possessor victimizes the child by perpetuating the invasion of the child's privacy." (internal quotation marks omitted)); see also Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109–248, § 501, 120 Stat. 587, 623 (2006) (finding that "[t]he illegal production, transportation, distribution, receipt, advertising[,] and possession of child pornography ... is harmful to the physiological, emotional, and mental health of the children depicted in child pornography" (emphasis added)); Osborne v. Ohio, 495 U.S. 103, 110 (1990) ("[T]he advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of [child pornography]." (first alteration in original) (internal quotation marks omitted)).

As to the "8 kids" series, the five victims have submitted impact statements, forensic reports, and financial estimates revealing losses of (1) $727,800 for victim #1; (2) $751,000 for victim #2; (3) $460,650 for victim #3; (4) $469,650 for victim #4; and (5) $521,950 for victim #5, for a total of $2,931,050. These losses include the cost of "lifelong" mental care treatment.[2]

As to the "spongB" series, the victim known as "Andy" submitted estimates of (1) his future psychological counseling and lost income totaling $2,121,963 (for which he requests $25,000) resulting from the fact that he knows others have been and will continue to view images of his abuse; (2) $29,000 for a forensic exam and follow-up report; and (3) $4,415 for an econometric calculation of his losses.[3]

Here, the defendant possessed images from both of these series. Because he admitted that he viewed child pornography on his devices and masturbated to it every day for many years, he should be held responsible for a substantial portion of these victims' losses. As such, the government respectfully submits that a restitution award of $125,000—$25,000 for each of the "8 kids" victims—plus $58,415 for "Andy" is appropriate in this case.

---

[2] U.S. Department of Justice records reveal that, in total, the "8 kids" victims have received approximately $917,000 from 161 defendants across the country.

[3] U.S. Department of Justice records reveal that "Andy" has received approximately $98,000 in restitution awards from 37 defendants across the country.

7

V.	Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the Guidelines range of 210 to 262 months' imprisonment. In addition, the government respectfully submits that the Court should impose a restitution order in the amount of $183,415 for the six victims of the defendant's offense.
.

                    Respectfully submitted,

                    ROBERT L. CAPERS
                    United States Attorney

By:	/s/
                    Keith D. Edelman
                    Assistant U.S. Attorney
                    (718) 254-6328

cc:	Amanda L. David, Esq. (by ECF)
    Patricia Sullivan, U.S. Probation Department (by e-mail)